## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                               No. CR 08-0837 JB

BRYON ANTHONY ESQUIBEL,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sealed Unopposed Motion for a Hearing on Detention, filed January 26, 2010 (Doc. 64). The Court held a hearing on January 27, 2010. The primary issues are: (i) whether the Court should set this matter for a hearing on Defendant Byron Anthony Esquibel's current detention status; and (ii) whether the Court should release Esquibel on the same conditions he was under when the Court placed him in the Attorney General's custody for a psychiatric evaluation. First, the Court grants Esquibel's motion for a hearing. Second, because Esquibel is no longer in the Attorney General's custody, and because the Court has the authority to limit the duration of Esquibel's commitment to the Attorney General's custody, the Court will grant Esquibel's request for release on the same pre-trial conditions under which he was previously released.

## PROCEDURAL BACKGROUND

On April 10, 2008, Esquibel appeared before the Honorable W. Daniel Schneider, United States Magistrate Judge, for a preliminary and detention hearing. See Clerk's Minutes Before Magistrate Judge W. Daniel Schneider, filed April 10, 2008 (Doc. 9). Judge Schneider released

Esquibel to the third-party custody of La Pasada Halfway House in Albuquerque, New Mexico.  See

Order Setting Conditions of Release at 2, filed April 10, 2008 (Doc. 8).

      Two local forensic psychologists, Dr. Elliott Rapoport and Dr. Mick Jepsen, determined

Esquibel to be legally incompetent.  See Motion ¶ 2, at 1.  On June 22, 2009, the Court issued an

order, pursuant to 18 U.S.C. § 4241(d), for Esquibel's commitment to the Attorney General's

custody.  See id.  The Order stated: "the Court will commit Esquibel to the Attorney General's

custody 'for a reasonable period of time, not to exceed four months, as is necessary to determine

whether there is a substantial probability that in the foreseeable future he will attain the capacity to

permit the proceedings to go further."  Memorandum Opinion and Order at 4, filed June 22, 2009

(Doc. 49).  The Court then ordered that it "commit[ed] Defendant Byron Anthony Esquibel to the

custody of the Attorney General for a time not to exceed four months, but will require the Attorney

General to give the Court a report every thirty days explaining whether continued commitment is

necessary."  Id.  Esquibel's counsel, Susan Dunleavy, stated in her motion that she is informed and

believes that, from April 10, 2008 until the day in which Esquibel went into the United States

Attorney General's custody, Esquibel complied with all of the conditions of his release.

      The Bureau of Prisons determined that Esquibel is legally competent.  On a date unknown

to defense counsel, but which the Court believes was sometime after December 2, 2009, the United

States Marshals returned Esquibel to Albuquerque and placed him in the Regional Correction

Center.  See id. ¶  3, at 2.

      Ms. Dunleavy believes that Esquibel remains incompetent and expects to request a hearing

on the competency determination.  See id. ¶ 4, at 2.  Ms. Dunleavy is not, however, prepared at this

time to go forward because of the need to consult with her expert.  See id.  Consequently, Esquibel

and Ms. Dunleavy ask the Court to set this matter for a hearing and conduct a hearing on his current

detention status.   See id.  Ms. Dunleavy asks the Court to set a hearing to determine whether Esquibel should be returned to the conditions of release previously imposed nearly two years ago and that Esquibel had not violated.

On January 27, 2010, the United States filed its response to the Defendant's Motion.  See United States Response to Defendant's Motion for Hearing on Detention, filed January 27, 2010 (Doc. 64).  Assistant United States Attorney Charlyn Rees does not oppose Esquibel's request for a hearing on his detention.  See Transcript of Hearing at 18:7-16 (taken January 27, 2010)(Court, Rees)("Tr.").[1]  The United States opposes, however, the release of Esquibel from the Attorney General's custody to the La Posada Halfway House pending his trial.  See Tr. at 7:7-9:3 (Court, Rees).

At the hearing, Ms. Rees argued that the structure of 18 U.S.C. § 4241 does not provide for release from Attorney General custody until there is a hearing at which Esquibel is adjudicated competent, or the hospital at which he is being treated and evaluated determines that Esquibel cannot be rendered competent in the foreseeable future.  See id. 7:7-13:6 (Court, Rees).  Ms. Dunleavy argued that the statute limits the Attorney General's power to detain the defendant to the four-month evaluation period set forth in 18 U.S.C. § 4241(d), unless further findings are made.  See id. at 3:9-5:2 (Court, Dunleavy).

## LAW REGARDING TEMPORARY DETENTION UNDER 18 U.S.C. § 4241

In the criminal justice system, before conviction, a defendant's mental state is relevant in at least three contexts.  First, the commission of many crimes requires that the defendant have a particular mental state when he commits the physical acts that constitute the crime.  See, e.g., United

---

[1] The Court's citation to the transcript refers to the court reporter's original, unedited version. The final transcript may contain slightly different page and/or line numbers.

States v. Phillips, 582 F.3d 1261, 1263 (10th Cir. 2009)(discussing the "mens rea" or mental state element of the federal crime of obstructing an official proceeding).  Second, generally, the defendant must have been "sane" at the time that he or she committed the charged crime.  See Fed. Jury Prac. & Instr. § 19:03 (6th ed.)(instructing the jury that "the law does not hold a person criminally accountable for his or her conduct while insane, insanity is a defense to the crime charged.").  Finally, the defendant must have sufficient mental capacity to be prosecuted for the commission of the crime.  See Cooper v. Oklahoma, 517 U.S. 348, 354 (1996)("[T]he criminal trial of an incompetent defendant violates due process.").  If the defendant is found incompetent to stand trial, the trial cannot proceed until his or her competence is restored. See Medina v. California, 505 U.S. at 448 (plurality)("[D]ue process considerations require suspension of the criminal trial until such time, if any, that the defendant regains the capacity to participate in his defense and understand the proceedings against him.")(citing Dusky v. United States, 362 U.S. 402 (1960)(per curiam)).

In the federal system, the process for determining whether a defendant is competent to stand trial is set forth in 18 U.S.C. § 4241.  See 18 U.S.C. § 4241.  Under 18 U.S.C. § 4241, a defendant or the United States may file a motion for a competency hearing at any time after the beginning of prosecutorial proceedings, but before sentencing.  See 18 U.S.C. § 4241(a).  Once such a motion has been filed, the court "shall" grant the motion "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  Id. (emphasis added).  To assist it at the hearing, the court may order that a psychiatric or psychological evaluation of the defendant be conducted, and that a report be filed with the court before the hearing.  See 18 U.S.C. § 4241(b).  The district court also has the discretion to confine a defendant for a reasonable period, not to exceed

thirty days, during the examination period.  See United States v. DeShazar, 451 F.3d 1221, 1227 n.4

(10th Cir. 2006)(quoting United States v. Deters, 143 F.3d 577, 579 (10th Cir. 1998)); 18 U.S.C.

§§ 4241(b) & 4247(b).  Sections 4241(d) provides:

> **(d) Determination and disposition.**--If, after the [initial competency] hearing, the
> court finds by a preponderance of the evidence that the defendant is presently
> suffering from a mental disease or defect rendering him mentally incompetent to the
> extent that he is unable to understand the nature and consequences of the proceedings
> against him or to assist properly in his defense, the court shall commit the defendant
> to the custody of the Attorney General. The Attorney General shall hospitalize the
> defendant for treatment in a suitable facility–
>
> **(1)** for such a reasonable period of time, not to exceed four months, as is necessary
> to determine whether there is a substantial probability that in the foreseeable future
> he will attain the capacity to permit the proceedings to go forward; and
>
> **(2)** for an additional reasonable period of time until--
>
> > **(A)** his mental condition is so improved that trial may proceed, if the court
> > finds that there is a substantial probability that within such additional period of time
> > he will attain the capacity to permit the proceedings to go forward; or
>
> > **(B)** the pending charges against him are disposed of according to law;
>
> whichever is earlier.

18 U.S.C. § 4241(d)(emphasis added).  The statute clearly provides for the commitment of "the

defendant to the custody of the Attorney General," but does not expressly say for what or for how

long the commitment will be.  The statute also clearly limits the time that the Attorney General can

keep a person in the hospital to four months, unless otherwise extended under Section 4241(d)(2).

The statute does not clearly set forth what rights the defendant has if the Attorney General

keeps the defendant beyond four months, which is often the case because travel to and from the

Bureau of Prisons takes time, and the hospitalization often lasts the full four months, making the

custody extend beyond the four-month period of hospitalization.  See 18 U.S.C. § 4241.  A number

of courts have stated or held that the United States does not have authority to detain a defendant

beyond the initial four-month period without obtaining additional authority from the court that first referred the defendant to the United States' custody.  See United States v. Magassouba, 544 F.3d 387, 392 (2d Cir. 2008)(stating as a general rule that, "when a defendant's term of § 4241(d)(1) confinement expires and no § 4241(d)(2) order has yet been entered, the Attorney General lacks statutory authority to hold a defendant in further custodial hospitalization."); United States v. Shawar, 865 F.2d 856, 863 n.11 (7th Cir. 1989)(stating that § 4241 "requires that a determination as to the individual's mental condition be made within four months, and that the individual cannot be held pursuant to section 4241 in excess of four months unless the court finds that the individual is likely to attain competency within a reasonable time."); United States v. Baker, 807 F.2d 1315, 1320 (6th Cir. 1986)(holding that, where there is "nothing in the record to indicate that his period of confinement was properly extended," "the court's initial commitment of appellant . . . was valid, [but] there was no authority to confine appellant beyond the four months authorized by section 4241(d)").  See also United States v. Strong, 489 F.3d 1055, 1061-62 (9th Cir. 2007)(rejecting a due-process attack on § 4241 because it "caps [the] initial commitment for incompetency to a period of no more than four months" and has a flexible early release mechanism where a defendant is determined to be competent before the four month period expires). But see United States v. Ferro, 321 F.3d 756, 761 (8th Cir. 2003)("It is . . . clear from the plain language of the statute . . . that the district court does not have the discretion, prior to a reasonable period of hospitalization in the custody of the Attorney General, to determine whether the defendant will likely attain the capacity to stand trial.").

## ANALYSIS

The United States asks the Court to interpret 18 U.S.C. § 4241(d) to mean that, upon the Court's initial determination of Esquibel's incompetency, it shall commit Esquibel to the custody

of the Attorney General indefinitely, or until the Court finds that Esquibel is competent or finds that Esquibel will not attain competency in the foreseeable future.  <u>See</u> Tr. at 7:13-8:21.  In other words, once it commits the defendant to the Attorney General's custody, it has no authority to take custody of the defendant again until it finds the defendant competent or finds the defendant will not attain competence in the foreseeable future.  The Court disagrees with this analysis.

First, it is unclear what the phrase "commit the defendant to the custody of the Attorney General" means in a practical sense.  If the defendant, pretrial, is detained by the Court, then he is in the custody of the United States Marshals Service, which is in the executive branch under the Attorney General.  <u>See</u> USDOJ: About: Department of Justice Agencies, http://www.justice.gov/agencies/index_list.html (last visited January 31, 2010).  The U.S. Marshals contract with various local facilities, at least in New Mexico, to house defendants pretrial.  So, in a sense, when a defendant is held pretrial, which occurs with the bulk of the defendants in this District, they are already in the Attorney General's custody when the Court orders them committed to the custody of the Attorney General.

On the other hand, when the Court releases a defendant pre-trial, such as to a halfway house, the commitment takes people who are not in custody and commits them into the custody of the Attorney General.  The United States Probation Office ("USPO") contracts with the La Posada Halfway House.  Thus, when a defendant is housed at La Posada, he or she is not in the custody of the U.S. Marshals or the Attorney General.

The statutory language clearly sets forth a limit to the Attorney General's right to hospitalize a defendant to determine whether the defendant is competent or will not achieve competency in the foreseeable future.  The Attorney General must complete its hospitalization to determine the defendant's status within a "reasonable period, not to exceed four months."  <u>United States v.</u>

Magassouba, 544 F.3d at 392; United States v. Shawar, 865 F.2d at 863 n.11; United States v. Baker, 807 F.2d at 1320; United States v. Strong, 489 F.3d at 1061-62; 18 U.S.C. § 4241.  In this case, the Attorney General has held Esquibel for a period beyond four months, and has found, not only that "there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward," 18 U.S.C. § 4241(d)(1), but that Esquibel has attained such capacity. While the Court must still hold a second competency hearing to determine, from a legal standpoint, whether Esquibel is competent to stand trial, the Attorney General has performed his function in evaluating the probability of Esquibel attaining competency.  There is no further reason or need under § 4241 for the Attorney General to continue detention of Esquibel.  The question is whether -- even though there is no further need for hospitalization or evaluation at this point -- Esquibel should remain in the Attorney General's custody.

The United States interprets § 4241(d)(2) to permit the Attorney General to continue confinement of Esquibel until the Court determines that Esquibel is competent to stand trial.  See 18 U.S.C. § 4241(d)(2).  While the statute does not say that the Court can limit the custody or end the custody, it also does not expressly negate those powers.  The statute thus does not expressly resolve the issue before the Court.  The Bureau of Prisons ("BOP") has already found, however, that Esquibel is competent.  It is unclear what purpose it might serve to keep Esquibel in the Attorney General's custody when the BOP believes that it has done its job in rehabilitating Esquibel to competency and a court has already adjudicated Esquibel not to be a danger to society or a flight risk under his prior conditions of release.  The Court believes that the power to commit also includes, in the absence of statutory language to the contrary, the power to limit custody to a certain period of time, impose some conditions on custody, and to, when appropriate, end the Attorney General's custody as long as doing so does not interfere with the Attorney General's duties under § 4241(d)(1).

-8-

Furthermore, by returning Esquibel to the state, the Attorney General may be returning the defendant to the Court and its custody.  Section 4241(e) states:

> **(e) Discharge.**--When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the defendant's counsel and to the attorney for the Government. The court shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine the competency of the defendant. If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings. Upon discharge, the defendant is subject to the provisions of chapters 207 and 227.

18 U.S.C. § 4241(d).  Thus, the Attorney General has already "discharge[d]" Esquibel from the hospital, without waiting for a court order to discharge.  "Upon discharge, the defendant is subject to the provisions of chapter 207 and 227."  Id.  The Historical and Statutory Notes discuss the references to other legislation: "Chapters 207 and 227, referred to in subsec. (e), are chapters 207, Release and detention pending judicial proceedings, and 227, Sentences, of this title, 18 U.S.C.A. § 3141 et seq. and § 3551 et seq., respectively."  Section 3141 states that "[a] judicial officer" shall order that "such person be released or detained, pending judicial proceedings, under this chapter." 18 U.S.C. § 3141(a).  Thus, when the Attorney General "discharged" Esquibel from custody, the Court's general release and detention authority is statutorily operational again.

Accordingly, the Court has basis for believing that it has authority to release Esquibel.  First, the commitment order limited the commitment to a period of time that has expired.  Second, because Esquibel has been discharged from the hospital and found competent by the BOP, the general release or detain authority has been returned to the Court.  The Court will therefore order that Esquibel be

released from the custody of the Attorney General, on his prior conditions, to the La Posada Halfway House pending the Court's final competency hearing and the trial of his case.

Ms. Rees stated at the hearing that she had no basis for opposing release other than the statutory construction argument. The Court has reread the conditions of release carefully and Esquibel's performance under them, and is comfortable with resuming release under those conditions. If, however, the United States wishes to have the Court detain Esquibel pending trial, it must provide the Court with additional basis for the Court to change the conditions or detain him.

**IT IS ORDERED** that the Defendant's Sealed Unopposed Motion for a Hearing on Detention is granted and the Defendant's request for a release on conditions is likewise granted.

_____
UNITED STATES DISTRICT JUDGE

_Counsel_:

Gregory J. Fouratt
  United States Attorney
Charlyn E. Rees
  Assistant United States Attorney
Albuquerque, New Mexico

    _Attorneys for the Plaintiff_

Susan B. Dunleavy
  Assistant Federal Public Defender
Albuquerque, New Mexico

    _Attorney for the Defendant_

-10-